UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

HILDA R. MUINOS,                          :
                                          :      Index No. 08-cv-0271
                    Plaintiff,            :
                                          :      J. Daniels
        v.                                :
                                          :
THOMAS NELSON, INC.,                      :
                                          :
                    Defendant.            :
------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT THOMAS NELSON, INC.'S MOTION TO TRANSFER**


**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

**Attorneys for Defendants**

NYC 194993v1 0086336-000001

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.    The Center of Gravity of this Litigation is in Tennessee……………………….......3

II.   Plaintiff's Choice of Forum Should Be Accorded Little
      Weight Here, Where No Other Factors Weigh in Favor
      of This Forum………………………………………………………………………….7

CONCLUSION…………………………………………………………………………10

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT THOMAS NELSON, INC.'S MOTION TO TRANSFER**

The central question on defendant's motion to transfer pursuant to 28 U.S.C § 1404(a) is

not, as Plaintiff would have it, whether defendant would be "inconvenienced to argue its case in

New York." Rather, on a motion to transfer the Court must determine whether there is a forum

more connected to the facts of the case, more convenient for all parties and witnesses, and better

suited to the administration of justice. Specifically, the Court must consider whether proceeding

with the case in the forum chosen by plaintiff would be a waste "of time, energy and money,"

and whether a transfer would "protect litigants, witnesses and the public against unnecessary

inconvenience and expense." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960).

Courts in this District seek to make a pragmatic determination of the "center of gravity"

of the litigation, and "routinely transfer cases when the principal events occurred, and the

principal witnesses are located, in another district." *Viacom Int'l, Inc. v. Melvin Simon Prods.,

Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (Sweet, J.); *see also In re Connetics,* 2007 WL

1522614, *6 (S.D.N.Y. May 23, 2007) (Kram, J.) (transferring action where "incidental

occurrences" took place in New York but did not "pull the 'center of gravity' of [the] litigation

away from California, where the facts constituting the defendants' alleged fraud took place.").

Here, despite this Florida plaintiff's attempt to manufacture a factual basis for a New York Court

to keep this action here, this effort is doomed to failure: the vast majority of the relevant facts,

witnesses and documents occurred or are located in Tennessee.

The primary arguments against transfer advanced by plaintiff in her Memorandum of

Law in Opposition to Defendant's Motion to Transfer Venue ("Opp. Memo") are that (a) she

needs no witnesses or documents from Tennessee; (b) *defendant* will need a witness and a

document from New York; and (c) she has a free place to stay in New York. The first two

assertions are demonstrably misleading, as discussed below, and the third has no bearing in a

case where plaintiff brought suit in a foreign jurisdiction rather than in her home state of Florida, and thus would not be significantly more inconvenienced by having to litigate in the district where the majority of the facts, witnesses and documents are concentrated. A motion for transfer of venue under § 1404(a) is not concerned with allowing a plaintiff to pick a forum based on where she has a free place to stay (and where her lawyer is located), but rather involves a comparison of potential venues to determine which one bears a closer relationship to the case.

Putting the insubstantiality of these alleged connections to New York in perspective, somewhat astonishingly, plaintiff has not named a single witness located in New York that she plans to call to testify on her own behalf, and has not identified a single document located in New York that she believes she needs for her case in chief. (Opp. Memo at 8-11.) It is thus unsurprising that her attempt to describe a "locus of operative facts" in New York similarly fails.

Plaintiff claims that defendant is liable for direct, contributory and vicarious copyright infringement for the publication of a book containing illustrations – drawn by non-party Aida Magdaluyo – that plaintiff claims are copies of her work. Among the many allegations in plaintiff's Complaint that she relies on for these claims are that Thomas Nelson: i) was the author of the allegedly infringing illustrations, because Magdaluyo was an employee of Thomas Nelson; ii) commissioned the new illustrations as works-for-hire; iii) provided Magdaluyo with the "means, materials, and opportunity" to infringe; iv) had a contract with Magdaluyo; v) provided copies of the original works to Magdaluyo; and vi) controlled Magdaluyo. While each of these allegations is false, more to the point, for purposes of the present motion, each of these allegations concerns events (or the lack thereof) in Tennessee, and will require proof from witnesses and documents in Tennessee.

Plaintiff claims that the alleged infringement entitles her to actual damages and defendant's profits on the books in question. Alternatively, she seeks statutory damages, claiming that Thomas Nelson's actions were willful. *Either* theory of damages will require

significant testimony from Tennessee. To prove willfulness, plaintiff will need the testimony of Thomas Nelson employees in order to determine the level of scienter that could be imputed to defendant. Any determination of actual damages will involve the testimony of Thomas Nelson employees who handle the financial side of defendant's business, and additional documents related to the financial aspects of publishing the books in question here. Defendant identifies several of its expected witnesses by name and their anticipated subjects of testimony in the accompanying Supplemental Affidavit of Frank Wentworth ("Wentworth Supp. Aff't").[1]

## I.    The Center of Gravity of this Litigation is in Tennessee

The location of the principal events giving rise to a plaintiff's claims, and the location of witnesses expected to be called to testify, are the key factors on a motion to transfer venue. *Hubbell, Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995) (Sweet, J.) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses."); *Montgomery v. Tap Enterprises, Inc.*, 2007 WL 576128, *2 (S.D.N.Y. Feb. 25, 2007) (Baer, J.) (same); *In re Connetics*, 2007 WL 1522614 at *6 ("center of gravity" is in state where the facts constituting the defendants' alleged fraud occurred); *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge North America*, 474 F. Supp.2d 474, 485 (S.D.N.Y. 2007) (Haight, J.) ("[t]he locus of operative facts is a 'primary factor' in determining whether to transfer venue."). In the instant case, as is often true, there is a close correlation between the two: most of the relevant witnesses reside where the events occurred. As noted in defendant's initial brief, here the overwhelming majority of events relating to production and publication of the allegedly infringing Books occurred either in whole

---

[1] Plaintiff states that "in a copyright case, the party seeking transfer bears an especially significant and 'heavy burden.'" (Opp. Memo at 7.) However, the cases she cites simply do not say this. Both *Editorial* and *Capitol Records* cite to *Lipton v. The Nature Co.*, 781 F.Supp. 1032, 1036 (S.D.N.Y. 1992) (Owen, J.), which simply says, "The moving party bears the heavy burden of demonstrating the desirability of transfer." It in no way singles out copyright cases or indicates that the burden is any different in a copyright case than it is in any other case.

or in part at Thomas Nelson's offices in Tennessee.[2] (Mov. Memo at 7-8.) Not surprisingly, the bulk of the relevant documents in this case also can be found in the same locale.

The events around which this case revolves – the creation of the Books and the alleged infringement of plaintiff's copyrights – occurred in and emanated from Tennessee. Plaintiff offers nothing to contradict the cases cited by defendant that explain that "it is the location of the allegedly infringing activities that is crucial." (Mov. Memo at 8, citing *Saregama India Ltd. v. Taylor*, No. 07 Civ. 7601 (VM), 2008 WL 243784 (S.D.N.Y. January 28, 2008); *Cartier v. D & D Jewelry Imports*, 510 F.Supp.2d 344 (S.D.N.Y. 2007).) In an analogous trademark case, this Court focused on the "design, development, or production of the allegedly infringing products" to determine where the locus of facts was concentrated. *Walker v. Jon Renau Collection, Inc.*, 423 F.Supp.2d 115, 118 (S.D.N.Y. 2005) (Daniels, J.)[3]

Plaintiff disingenuously claims that "the events surrounding the production of the [allegedly] Infringing Books" are "immaterial." (Opp. Memo at 9.) Her own complaint belies this assertion. Plaintiff's first cause of action, for direct copyright infringement, requires plaintiff to demonstrate that defendant improperly appropriated plaintiff's original expression. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This may be demonstrated by evidence of actual copying or by showing access and a substantial similarity between the two works. *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993). In her complaint, plaintiff alleges actual copying on the part of Thomas Nelson (¶¶ 91-95) and clearly the locus of any facts

---

[2]    With regard to defendant's acquisition of publication rights from the Author, this was the result of negotiations between Thomas Nelson in Tennessee and the Author and/or her attorney in California and/or her agent in New York. (Wentworth Supp. Aff't ¶ 16.)

[3] Courts transfer cases in these circumstances even where plaintiff is a resident of the original venue. *See, e.g.*, *Defilice v. Southwest Airlines Co.*, 2005 WL 820515, *4 (E.D.N.Y. 2005) (granting motion to transfer from New York to Florida despite plaintiff being a resident of New York, because "[t]he gravamen of the present case implicates activity in Florida."). Here, where plaintiff Muinos is *not* a resident of New York, the action's connections to this district are that much weaker.

related to this allegation is Tennessee. To disprove plaintiff's claim, defendant will rely on witnesses or documents in Tennessee (Thomas Nelson), and perhaps in California (the Author) or the Philippines (Ms. Magdaluyo), but not on evidence located in New York. Plaintiff also alleges that defendant can be deemed the author of the allegedly infringing illustrations because Magdaluyo was either an employee of Thomas Nelson or the illustrations were created as works for hire. (Complaint ¶ 119-20.) Defendant intends to call at least three Tennessee witnesses – Larry Stone, Larry Downs and Pamela Clements – to rebut these allegations, as detailed in the Wentworth Supplemental Affidavit at ¶¶ 5, 8. Again, the only other witnesses who might have relevant testimony are the Author and Magdaluyo, neither of whom resides in New York.

Plaintiff's second and third causes of action, for contributory and vicarious copyright infringement, allege that Thomas Nelson (a) "provided Magdaluyo with the means, materials, and opportunity to carry out the acts constituting copyright infringement"; gave her a "work assignment" and "contract"; and provided her with "the authorized books [and] copies of the Works" (Complaint ¶¶ 126-129); and (b) "controlled Magdaluyo by way of its role as employer, editor and publisher" and had the "right and ability to supervise Magdaluyo" (Complaint ¶¶ 132-135). *All* of these allegations (each one false – *see* corresponding paragraphs of Answer) refer directly to the "events surrounding the production of the [allegedly] Infringing Books" – events that occurred (or did not occur) in Tennessee. Again, the Wentworth Supplemental Affidavit details the testimony defendant intends to elicit to rebut these claims.

Defendant will further present evidence about its relationship with Author Dr. Lifshitz, and defendant's witnesses (including Larry Stone, Jennifer Greenstein, Larry Downs, Pamela Clements, Louetta Sayne and Suzanne Prokasy) will testify that it was the author, and not defendant Thomas Nelson, who agreed to provide illustrations to Thomas Nelson, and who then commissioned new illustrations. (Wentworth Supp. Aff't ¶¶ 4, 6, 8, 16.) The vast majority, if not all, of the documents regarding Thomas Nelson's relationships with the Author and

Magdaluyo will be located in Tennessee.

Despite plaintiff having been paid a flat fee of merely $6,000 to create the illustrations at issue (Complaint ¶ 38), she is requesting $4,350,000 in statutory damages in this case (Complaint, Demand for Relief ¶ 3). A necessary element of her demand for enhanced statutory damages is a showing of willfulness on the part of Thomas Nelson, and plaintiff alleges in her complaint that Thomas Nelson knowingly infringed plaintiff's copyrighted works by hiring an illustrator to duplicate those works. (Complaint at ¶¶ 102-112; 123; 125; 135.) Defendant will seek to defend such allegations regarding willfulness through the testimony of its employees that they were wholly unaware of any copyright claims of Muinos and that all matters relating to the illustrations were handled by the Author, as well as by introducing contemporaneous documents located in Tennessee that indicate defendant's lack of scienter and the Author's representations that she held all necessary rights.[4] (Wentworth Supp. Aff't ¶ 4-8.)

Plaintiff also seeks actual damages in this case, in particular defendant's profits from sales of the Books. These are facts peculiarly within the possession of Thomas Nelson. To demonstrate actual damages, plaintiff will at the very least need to review Thomas Nelson's accounting documents showing revenues from the Books, and will need to seek the testimony of those in the accounting department at Thomas Nelson responsible for tracking the finances of the Books. To be sure, defendant will seek to demonstrate all expenses that are an offset to revenues, as well as the proper apportionment of profits attributable to the illustrations, as opposed to the textual content of the Books. (Wentworth Supp. Aff't ¶ 12-14.)

The locus of operative facts, and the location of witnesses and documents, points overwhelmingly to Tennessee as a more convenient forum.

---

[4] Plaintiff argues that the Author's representations are immaterial because good faith reliance is not a defense to infringement claims. (Opp. Memo at 9-10.) However, as noted, defendant's knowledge is clearly relevant on plaintiff's statutory damages claims.

II.    **Plaintiff's Choice of Forum Should Be Accorded Little Weight Here, Where No Other Factors Weigh in Favor of This Forum**

When contrasted with these substantial ties to Tennessee, plaintiff's reasons for bringing this case in New York – the Books were sold in New York bookstores, she once contracted with a New York publisher, and she has a free place to stay in New York – reveal themselves as paper-thin.[5]  As plaintiff does not dispute, when a plaintiff chooses a venue where she does not reside and without substantial connection to the action, the weight afforded her choice is greatly diminished.  (Mov. Memo at 10.)  *Frame v. Whole Foods Market*, 2007 WL 2815613, at *5 (S.D.N.Y. Sep. 24, 2007) (Batts, J.) ("Plaintiff in this case is not a resident of New York and according to the allegations contained in the Complaint and Plaintiff's Declaration, New York has only an ancillary connection to this dispute.").

Transfer of venue is appropriate where the plaintiff brings suit in a foreign jurisdiction and thus would not be significantly more inconvenienced by having to litigate in the defendant's home state.  *See, e.g., Walker v. Jon Renau Collection, Inc.*, 423 F. Supp.2d 115, 118 (S.D.N.Y. 2005) (Daniels, J.) (granting transfer, finding that "[i]f the case is transferred, the hardship of travel on plaintiff will only slightly be increased, since she would have to travel from London regardless of where the case is decided.").  Indeed, where all of the parties to a lawsuit would have to travel to plaintiff's chosen forum, as would be the case here, courts have found that the reduction in inconvenience even to just one party weighs *in favor of* transfer.  *See  Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp.2d 325, 328 (E.D.N.Y. 2006) ("Thus, if the action remains in New York, all remaining parties will be required to travel. World Wide will be

---

[5] Plaintiff's protestations notwithstanding (Opp. Memo at 12), the paucity of relevant ties to New York makes it clear that her counsel's presence in New York was the motivating factor behind her choice of New York as a venue.  The many concerns she has about litigating in Tennessee would all have been alleviated had she simply brought this action in Florida, where she resides. However, as she explains, she has been working with her current counsel "for at least three years."  (Muinos Dec. ¶ 8.)

relieved of this burden if the action is transferred to Tennessee. Accordingly, this factor weighs in favor of transferring this action to the Western District of Tennessee.").[6]

Plaintiff repeatedly hinges her venue connection to New York on the sale of the Books at bookstores in Manhattan, based on an erroneous reading of *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, 2004 U.S. Dist. LEXIS 3305 (S.D.N.Y. 2004) (Preska, J.), which holds that copyright infringement may be deemed to occur at the point of consumer purchase for jurisdictional purposes. Defendant does not dispute that nationwide sales of a book would be sufficient to confer jurisdiction on federal courts in any district where sales occurred. However, that is not the question on this motion, which seeks a transfer to a more convenient forum; here, the issue is the locus of operative facts, which is a question of weight, not sufficiency. Thus, the key query here is *not* whether New York sales give this court personal jurisdiction over defendant, but rather whether the incremental sale of allegedly infringing items in New York as part of a nationwide distribution weighs heavily in the "locus of operative facts" inquiry. It does not: courts regularly transfer cases away from jurisdictions in which mere distribution of an allegedly infringing work occurred – especially where the distribution is neither concentrated in, nor unique to, the forum chosen by plaintiff – to a jurisdiction where more significant acts of infringement allegedly occurred, such as the production of the infringing work. In one case directly on point, in which a plaintiff sued Whole Foods for infringing the copyrighted product

---

[6]  Plaintiff summarily states that she has "relatively little financial means" and that she has a free place to stay in New York, but as noted previously, her decision to litigate in New York rather than in her home state of Florida demonstrates "that financial considerations related to litigating in a distant court are not prohibitive." (Mov. Br. at 10, citing *Frame*, 2007 WL 2815613 at *6.)  It also demonstrates that convenience was not a motivating factor in her original choice of forum. Plaintiff also does not cite to any cases – nor can she – where a plaintiff successfully argued that she would be less inconvenienced by litigating in a foreign district of her choice because she could stay at a friend's house during trial. This Court has explicitly rejected grounds of convenience to the plaintiff when "the hardship of travel on plaintiff will only slightly be increased, since she would have to travel from [her foreign home] regardless of where the case is decided." *Walker v. Jon Renau Collection, Inc.*, 423 F.Supp.2d 115, 118 (S.D.N.Y. 2005) (Daniels, J.).

label she had designed, the Court noted that "[a]s Plaintiff herself alleges, Defendant's allegedly infringing conduct involving the use the 365 Brand Label occurs everywhere Defendant operates supermarkets, not just in New York," and thus found the case's connection to New York to be minimal. *Frame*, 2007 WL 2815613 at *5 (S.D.N.Y. 2007).[7] As this court has stated in the analogous trademark context, "[w]here the nexus of the allegedly infringing activity is in the transferee District, it is insufficient to find a connection to New York based solely on sales of the product that took place here." *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp.2d 115, 119 (S.D.N.Y. 2005) (Daniels, J.).

To bolster her choice to litigate in a district where she does not reside, plaintiff argues that the validity of her copyright is "the very basis of this action." And that New York is "the locus of copyright ownership." Based on this assertion (which somehow presumes that she need not proffer any evidence of infringement or damages), she further argues that the publishing history of her illustrations is critical – not to her case, but to defendant's affirmative defenses.

First, with respect to the "locus of copyright ownership," plaintiff has not cited any cases that even suggest that such a notion exists. Her copyright is a national construct; plaintiff lives in Florida and presumably her copyright registrations are in her possession there. Second, despite plaintiff's assertions, this case is *not* about the "history of respect for Ms. Muinos' copyrights" by other publishers. (Opp. Memo at 3.) Whether prior publishers "abided by" or "respected" her interests has no bearing on whether she retained ownership, which is a matter of statute and contract law. Plaintiff focuses on a single employee of her former publisher and a single document that may be within that publisher's possession, and argues that defendant will need this testimony and evidence to "disprove the validity of Ms. Muinos' copyrights." (Opp. Memo at 10.) Yet plaintiff asserts that she holds valid copyright registrations in her own name.

---

[7] *See also January Enterprises, Inc. v. Buena Vista Television*, 1997 WL 43400, *1 (S.D.N.Y. Feb. 3, 1997) (Owen, J.) (nationally televised television show); *Columbia Pictures Industries, Inc. v. Fung*, 447 F. Supp.2d 306, 310-11 (S.D.N.Y. 2006) (Stanton, J.) (internet website).

Plaintiff's assertion that "all relevant testimony needed to . . . disprove the validity of Ms. Muinos' copyrights . . . can be provided only by Ms. Spagnuolo and other individuals at HarperCollins who abided by the terms of the Avon Agreement" is erroneous.  It is not clear why the testimony of Ms. Spagnulo, much less other witnesses, would be needed if a single agreement sets forth the relevant terms.  More importantly, initial copyright interests tell only a part of the story: defendant is entitled to probe whether Ms. Muinos later assigned her interests to any third party, and this is information that should be in *her* possession.

Regardless, a single witness and document that *might* be relevant to one of defendant's affirmative defenses is hardly sufficient to tip the balance of factors in favor of New York, when the preponderance of witnesses and documents, and the location of the relevant events, are clearly and convincingly elsewhere.

### CONCLUSION

Based upon the relevant facts and the developed law, it is respectfully urged that transfer of this case to the United States District Court for the Middle District of Tennessee, at Nashville, would be (a) in the interests of justice, and (b) for the convenience of the witnesses and the parties, and the same is respectfully requested.

Dated: New York, New York
     March 26, 2008

                        DAVIS WRIGHT TREMAINE LLP

                        By: _____

                            Lacy H. Koonce (LK 8784)
                            Kevan D. Choset

                            1633 Broadway
                            New York, New York 10019
                            (212) 489-8230

                            Attorneys for Defendant Thomas Nelson, Inc.