UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HILDA R. MUINOS,

           Plaintiff,

   v.

THOMAS NELSON, INC.,

           Defendant.
---------------------------------------------------------------x

Index No. 08-cv-0271

J. Daniels

**SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF MOTION TO TRANSFER VENUE**

STATE OF TENNESSEE    )
                            : ss.:
COUNTY OF DAVIDSON  )

FRANK WENTWORTH, being duly sworn, deposes and says:

1. I am an attorney admitted to practice law in the state of Tennessee. I am Vice President and General Counsel of Thomas Nelson, Inc. ("Thomas Nelson"). This affidavit supplements my earlier affidavit in this case, sworn to by me on March 5, 2008. The information set forth herein is based on my familiarity with this proceeding and the events and files related thereto.

2. I understand that one of the issues on this motion is the "locus of operative facts," and another is the location of relevant witnesses and documents. As General Counsel of Thomas Nelson, I have conducted a preliminary investigation into the facts related to this case, and what follows represents my best understanding, on information and belief, as to how several of the individuals involved in the publication of the Books would testify if called to do so, and the content and location of certain documents related to the Books.

**Publication of the Books/Illustrations**

3. Publication of the Books occurred entirely in Nashville, Tennessee, and was conducted by Thomas Nelson employees working in Thomas Nelson's main office in Nashville.

4. As explained in my March 5 affidavit, Larry Stone (who is no longer an employee of Thomas Nelson but still resides in Nashville) was the editor who acquired the Books for Thomas Nelson. Upon information and belief, Stone will testify to the fact that he acquired the rights to publish the Books from the author, Dr. Aliza Lifshitz ("Lifshitz" or "Author"). He will further testify to the fact that the acquisition from the Author included all illustrations for the book, which the author was obligated to provide. Stone will testify that Thomas Nelson's contract with the Author required her to warrant that she had the right to provide to Thomas Nelson all the material she was providing, and that she did in fact warrant to this.

5. Upon information and belief, Stone will testify that he never dealt with the plaintiff, Hilda Muinos ("Muinos"). Stone will testify to the fact that he was not aware of any claims that Muinos had to the illustrations in the Books, and that he had no knowledge that any person believed that anything in the Books would infringe any person's copyright. Stone will further testify that Thomas Nelson had no direct dealings with the Books' illustrator, Aida Magdaluyo ("Magdaluyo"), that it never employed her, and that it never entered into any agreements with her. (Any agreements with Magdaluyo or anyone else related to the Books, if they existed, would be in Thomas Nelson's main office in Nashville.) Stone will testify that he never provided Magdaluyo with a work assignment and never provided her with copies of the Books.

6. As also explained in my March 5 affidavit, Jennifer Greenstein (who no longer is an employee of Thomas Nelson and currently resides in Minnesota) was the editor who worked on the Spanish-language version of the book, "Mamá Sana, Bebé Sano." She will testify to the fact that she was the editor primarily responsible for the book. Greenstein will testify that all of her dealings with respect to the illustrations in the Books took place with the Author, and not the

illustrator. Specifically, Greenstein will testify that she never dealt with plaintiff Muinos, knew of no legal claims that Muinos had to the illustrations in the Books, and had no knowledge that any person believed that anything in the Books would infringe any person's copyright.

7. Greenstein will further testify that she had no direct dealings with the Books' illustrator, Magdaluyo, and that she never employed her or otherwise entered into any contracts with her. Greenstein will testify that she never provided Magdaluyo with a work assignment and never provided her with copies of the Books.

8. Larry Downs, who resides in Tennessee and is employed by Thomas Nelson, was the publisher in charge of the Spanish-language version of the book, "Mamá Sana, Bebé Sano." Pamela Clements, who also resides in Tennessee and is employed by Thomas Nelson, was the publisher in charge of the English-language version of the book, "Healthy Mother, Healthy Baby." Upon information and belief, both Downs and Clements will testify to the fact that most of the work for the Books was done by Ms. Greenstein, and that the English-language version basically followed the Spanish-language version. They will also testify that they never dealt with plaintiff Muinos, knew of no legal claims that Muinos had to the illustrations in the Books, and had no knowledge that any person believed that anything in the Books would infringe any person's copyright. Each will further testify that he or she had no direct dealings with the Books' illustrator, Magdaluyo, and never employed her or entered into any contracts with her. Finally, each will also testify that he or she never provided Magdaluyo with a work assignment and never provided her with copies of the Books.

9. April Dupree is a royalty coordinator at Thomas Nelson. Upon information and belief, Dupree, who resides in Tennessee, will testify that Magdaluyo was never an employee of

Thomas Nelson in any capacity. She will further testify that to her knowledge Magdaluyo never had any contracts with Thomas Nelson, whether for employment or otherwise.

**Finances of the Books**

10. It is my understanding that Thomas Nelson never paid any money to the illustrator, Magdaluyo. Upon information and belief, Stone, Greenstein, Downs and Clements will all testify to the fact that they never entered any agreements to pay Magdaluyo and that they never in fact paid her any money.

11. Upon information and belief, Stone will also testify to his valuation of the illustrations, if any, and any consideration he gave them when choosing to acquire the Books from Dr. Lifshitz.

12. Upon information and belief, Dupree will testify that Magdaluyo never received any money from Thomas Nelson, including fees, royalties, or any other types of payments. She will further testify to any advances and royalties paid to Dr. Lifshitz. Any documents regarding royalties paid to Magdaluyo, Lifshitz or anyone else would be maintained in Thomas Nelson's main offices in Nashville, although presumably the author and her agent, The Literary Group, The Stanford Building, 51 E. 25th St., Ste. 401, New York, NY 10010, may also have copies.

13. As the publishers in charge of this book project, Downs and Clements supervised and were responsible for all aspects of production and publication of the Books, including advertising and promotion and the like. They were also ultimately responsible for the financial aspects of the Books' publication, including budgets as well as the actual expenses spent on the Books, as well as revenues from publication of the Books. Each will testify to the amount of money spent by Thomas Nelson in advertising the Books, as well as whether any of the illustrations at issue were used in such advertisements, as well as other expenses related to

publication and distribution of the Books. They also will testify to the sales and profits of the Books, and any other relevant financial information.

14. Additionally, Troy Edens is Thomas Nelson's Controller, and upon information and belief has relevant knowledge regarding the financial details of the Books' publication, and will testify to same.

**The Author**

15. While I have not spoken with the Author, Dr. Aliza Lifshitz (who lives in California) with respect to testimony she would give in this case, I have no reason to believe that she would contradict anything that I have stated above. More specifically, upon information and belief, Dr. Lifshitz would testify that she was the one who dealt with the illustrator Magdaluyo and that she provided these illustrations to Thomas Nelson. I believe that Dr. Lifshitz would confirm that no individual at Thomas Nelson had any reason to believe that Muinos (or anyone else) believed that the publication of the illustrations would violate any person's copyright.

16. Upon information and belief, at the time Thomas Nelson acquired the Books from Dr. Lifshitz, the contract documents signed by Dr. Lifshitz and Larry Stone on behalf of Thomas Nelson, copies of which are located in Thomas Nelson's offices in Nashville, were negotiated by Larry Stone, Louetta Sayne, and Suzanne Prokasy at Thomas Nelson. Upon information and belief, they would have negotiated with Dr. Lifshitz's attorney in California, with the author's agent, The Literary Group, and possibly with Dr. Lifshitz herself.

**The Illustrator**

17. I have not spoken to the illustrator of the books, Aida Magdaluyo, who I believe lives in the Philippines; to my knowledge, no employee of Thomas Nelson has ever spoken to her. Nonetheless, I have no reason to believe that she would contradict anything that I have

stated above. Specifically, upon information and belief, she would confirm that her dealings with the illustrations for the Books were conducted directly with the Author, and that she never dealt with, or received money from, Thomas Nelson.

18. As noted, the information set forth hereinabove is based on my familiarity with this proceeding and the events and files related thereto, and on my preliminary investigation into the facts related to this case.

WHEREFORE, I respectfully request that the Court grant Thomas Nelson's motion to transfer venue to the Middle District of Tennessee.

                                                                                      Frank Wentworth

Sworn to before me this
26th day of Mar, 2008

    Donna Ledbetter
    Notary Public